UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| KEVIN T. HARRISON, JR., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 1:23-cv-00047-SEP |
| | ) |
| MICHAEL C. HAKALA, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff Kevin T. Harrison, Jr.'s motion for leave to commence this civil action without prepaying fees or costs. The Court grants the motion and assesses an initial partial filing fee of $8.37. Additionally, for the reasons set forth below, the Court will issue service on Plaintiff's individual capacity claims against Defendants Dr. Hakala and Nurse Meredith, and will dismiss the official capacity claims against all Defendants as well as the individual capacity claims against Defendants Nurse Lizenbee, Dana Degen, and Nurse Hill.

### 28 U.S.C. § 1915(b)(1)

A prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20% of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. 28 U.S.C. § 1915(b)(2). After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20% of the preceding month's income credited to his account. *Id*. The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of his motion for leave to proceed *in forma pauperis*, Plaintiff submitted a copy of his inmate account statement showing an average monthly deposit of $41.83 and an average monthly balance of $24.85. Because Plaintiff has insufficient funds to pay the entire filing fee, the Court will assess an initial partial filing fee of $8.37, which is 20% of Plaintiff's average monthly deposit.

**LEGAL STANDARD ON INITIAL REVIEW**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, or if it fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (court is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that, "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir.2004)). Still, even pro se complaints are required to "allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); s*ee also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (federal courts not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). And "procedural rules in ordinary civil litigation" need not be "interpreted so as to excuse mistakes by those who proceed without counsel." *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**THE COMPLAINT**

Plaintiff filed the Complaint pursuant to 42 U.S.C. § 1983 against Dr. Michael C. Hakala; Nurses Becky D. Lizenbee, Jacquelyn M. Merideth, and Dana Degen; and Nurse Practitioner

2

Nina Hill.[1]  Doc. [1].  Defendants are Corizon employees, and Plaintiff sues them in their official and individual capacities.  *Id*. at 2-3.  The events giving rise to Plaintiff's claims occurred while he was incarcerated at the Southeast Correctional Center (SECC).  He alleges as follows.

On July 5, 2011, Plaintiff saw Dr. Hakala for lumps on the left side of his chest.  Plaintiff was concerned he had cancer.  *Id*. at 12.  Dr. Hakala diagnosed the lumps as a benign lipoma without ordering a biopsy.  *Id*.  On March 13, 2012, Plaintiff complained to Nurse Lizenbee about three "knots" on his left chest, which he continued to suspect were cancerous.  *Id*. at 13.  Nurse Lizenbee did not refer him to a doctor where a biopsy could be ordered.  *Id*.  On November 12, 2013, Plaintiff again expressed his concerns to Dr. Hakala because the lumps had grown, but the doctor once again assessed the lumps as benign without a biopsy.  *Id*. at 14.

Plaintiff also claims that on four occasions in August of 2016, Nurse Merideth intentionally failed to see Plaintiff for a nurse sick call regarding the lumps on his left chest.  *Id*. at 15.  Plaintiff appears to allege that Nurse Merideth falsely indicated on paperwork that he refused to be seen by medical.  *Id*.

On November 14, 2018, approximately seven years after his first visit with Dr. Hakala, Plaintiff was examined by a non-party doctor who ordered a biopsy.  *Id*. at 16.  The results revealed a malignant form of skin cancer, dermatofibrosarcoma protuberans (DFSP).  *Id*.  The mass was removed on January 24, 2019, and Plaintiff was prescribed pain medication.  *Id*.

Plaintiff asserts that on several occasions between October 2020 and January 2021, while he was in administrative segregation, he submitted "almost daily" health services requests "concerning his skin cancer and nerve pain."  *Id*.  Plaintiff alleges that Dana Degen, who was responsible for scheduling appointments, failed to schedule him for a sick call.  *Id*.  Although Plaintiff does not specify the contents of the requests or allege that Degen or any other Defendant was aware of them, he states it is Missouri Department of Corrections policy for "nursing staff" to assess health service requests on a daily basis and determine whether the inmate should be brought to the health unit for assessment.  *Id*.

---

[1] Plaintiff previously filed a substantially similar complaint against the same five defendants.  *See Harrison v. Hakala*, Case No. 4:22-cv-361-PLC (E.D. Mo. Mar. 28, 2022).  Plaintiff was directed to submit an amended complaint to cure specific pleading deficiencies, but the case was dismissed pursuant to Fed. R. Civ. P. 41(b) for failure to comply with the Court's order.  *Id.* at Docs. [6], [8], [9].  Plaintiff appealed, and the United States Court of Appeals for Eighth Circuit dismissed the appeal for lack of jurisdiction.  *Harrison v. Hakala, et al.*, No. 22-3238 (8th Cir. 2022).

On December 24, 2020, Plaintiff self-declared a medical emergency because his health service requests had not been answered.  *Id*.  He was assessed by a non-party nurse who referred him for a sick call.  *Id*.  On January 14, 2021, Plaintiff was seen by Nurse Practitioner Hill.  *Id*.  Plaintiff alleges Hill ignored his complaints of pain and discomfort, failed to renew his pain medicine, and decreased his ibuprofen dosage.  *Id*.  Plaintiff suffered from pain until his prescription was renewed a little over a month later by a non-party doctor.  *Id*.

Plaintiff contends that Defendants' deliberate indifference to his health concerns caused him unnecessary pain and cancer growth, a more invasive surgery, permanent damage to his nerves, and a scar on his chest.  *Id*. at 17.  Plaintiff describes his injuries as severe pain, tightness, numbness, and tingling sensations throughout his left side.  *Id*.  He claims these injuries could have been avoided if action had been taken sooner.  *Id*.

Plaintiff seeks $50,000 in compensatory damages and $50,000 in punitive damages from each Defendant, and an injunction ordering Defendants and their employer, Corizon, to provide Plaintiff with proper medical treatment, including "sufficient pain medication, follow-ups with specialist, regular check-ups in chronic care, pain clinic, and cancer clinic, etc."  *Id*. at 17-18.

Attached to the Complaint is a copy of SECC's 'Offender Grievance Appeal Response.' Id. at 19.  The response indicates that SECC reviewed Plaintiff's medical record and grievances, and determined that from March 22, 2021, to July 20, 2021, his medical issues were properly treated by healthcare professionals.  As such, his appeal was denied.

## DISCUSSION

### A.  Official Capacity Claims

Plaintiff's claims against Defendants in their official capacities fail to state a claim.  An official capacity claim against an individual is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017).  Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).  *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) ("plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer").  Thus, in order to prevail on an official capacity claim, a plaintiff must establish the governmental entity's liability for the alleged conduct.

4

Defendants are employees of Corizon Health Care, which is a corporation acting under color of state law, and an official capacity claim against Defendants is actually a claim against Corizon itself.  As a corporation acting under color of state law, Corizon cannot be liable on a *respondeat superior* theory.   *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007).  Rather, to support such a claim, a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983").

The Complaint alleges no facts suggesting that Plaintiff was injured due to a policy, custom, or official action on the part of Corizon.  On the contrary, the allegations are limited to what each individual Defendant did or failed to do in relation to Plaintiff's medical care. Because the Complaint contains no facts that would establish Corizon's liability for the alleged misconduct, Plaintiff's official capacity claims fail.  *See Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (describing claims brought against corporations acting under color of state law).

### B.  Individual Capacity Claims

Plaintiff's individual capacity claims are premised on inadequate medical care.  The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs.  *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012).  To establish that a denial of medical care rises to the level of an Eighth Amendment violation, a plaintiff must allege facts demonstrating that a defendant acted with deliberate indifference.  *Id.*  The test for deliberate indifference has two prongs.  *Id.*  First, an inmate must show that he "suffered from an objectively serious medical need."  *Id.*  A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (internal citation omitted).  Second, a plaintiff must show the defendant actually knew of, and yet deliberately disregarded, the need.  *Id*.  "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995) (citing *Estelle*, 429 U.S. at 104-05)).  Allegations of mere negligence in giving or failing to supply medical treatment will not suffice under § 1983.

5

*Estelle*, 429 U.S. at 106.  Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference to a prisoner's serious medical needs.  *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008) (internal quotation marks and citation omitted).

The Court finds that Plaintiff has sufficiently alleged a serious medical condition for this stage of the litigation.  Plaintiff asserts lumps or knots developed on his chest, which were later discovered to be a malignant form of skin cancer.  The Court now turns to whether Plaintiff sufficiently alleged that Defendants' responses to his serious need were deliberately indifferent.

### 1. *Defendant Dr. Hakala*

Plaintiff alleges that Dr. Hakala was deliberately indifferent to his serious medical need because he misdiagnosed the lumps as benign masses and then failed to reconsider the diagnosis when Plaintiff returned with a mass that had grown considerably.  Dr. Hakala did not order a biopsy at either visit, despite Plaintiff's concern that the lumps were cancerous.

Typically, a misdiagnosis claim does not amount to deliberate indifference because it tends to fall under medical malpractice, which is not actionable under the Eighth Amendment. *See McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009) ("Negligent misdiagnosis does not create a cognizable claim under § 1983.").  *See also Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (mere negligence or inadvertence does not rise to the level of deliberate indifference); *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) (deliberate indifference is greater than gross negligence).  A prisoner's disagreement with medical care provided also does not constitute a constitutional violation.  *Phillips v. Jasper County Jail*, 437 F.3d 791, 795 (8th Cir. 2006). When a *delay* in treatment is alleged to have violated an inmate's constitutional rights, however, a court measures the objective severity of the deprivation "by reference to the *effect* of delay in treatment."  *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (emphasis in original) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)).

According to Plaintiff's allegations, on July 5, 2011, he was seen by Dr. Hakala with lumps on his chest, and he verbalized a fear that he had cancer.  Without performing a biopsy, Dr. Hakala assessed the lumps as a benign lipoma.  By November 2013, Plaintiff asserts the mass had grown considerably.  Despite the growth, Dr. Hakala again made the assessment, without a biopsy, that the lumps were benign.  On November 14, 2018, after Plaintiff continued to complain about the lumps, he was examined by a non-party doctor who ordered a biopsy, and

6

the results showed DFSP.  The mass was removed on January 24, 2019, approximately eight years after Plaintiff's first complaint.  Plaintiff alleges that Dr. Hakala's inaction, or delay in treatment, caused the cancer to grow and spread, leading to a more invasive surgery and permanent nerve damage.

*Taylor v. Roper*, 83 Fed. Appx. 142 (8th Cir. 2003), is instructive here.  In *Taylor*, the Eighth Circuit reversed the district court's dismissal of a deliberate indifference claim because "the Eighth Amendment claim against [the doctor] could have been more fully developed, especially because [the plaintiff] alleges that [the doctor] refused to conduct further testing despite [plaintiff's] continued complaints and . . . the delay exacerbated [the plaintiff's] condition."  *Id.* at 144; *Burke v. N.D. Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002) (per curiam) (medical care so inappropriate as to evince refusal to provide essential care violates Eighth Amendment); *Smith v. Jenkins*, 919 F.2d 90, 92-93 (8th Cir. 1990) (physician's decision to take easier or less efficacious course of treatment, to intentionally maltreat inmate, or to refuse to provide essential care can constitute deliberate indifference; often whether misdiagnosis resulted from deliberate indifference or negligence is factual question requiring exploration by expert witnesses)).

Given the "benefit of a liberal construction," the Complaint presents a plausible claim that a delay in care had serious adverse effects on Plaintiff's condition and outcome.  *Haines*, 404 U.S. at 520.  His Eighth Amendment allegations against Dr. Hakala may therefore proceed at this time.[2]  The Court directs the Clerk of Court to issue process on Dr. Hakala in his individual capacity as to Plaintiff's claim of deliberate indifference to his medical needs.

### 2. *Defendant Nurse Lizenbee*

On March 13, 2012, eight months after seeing Dr. Hakala, Plaintiff declared a medical emergency for the purpose of acquiring treatment for the lumps on his chest.  Plaintiff states he saw Nurse Lizenbee on that occasion, after which she failed to refer Plaintiff to a doctor and failed to recommend a biopsy.  Plaintiff suggests Nurse Lizenbee intentionally delayed his medical treatment and prolonged his cancer diagnosis.

Plaintiff's claim against Nurse Lizenbee fails on initial review.  Plaintiff does not allege that Lizenbee had the authority to refer him for a biopsy or that he asked her for a referral to a

---

[2] The Court cautions Plaintiff that this is a preliminary determination based solely on the allegations in the Complaint.  This is not a determination of the merits of his claim or potential defenses thereto.

doctor.  Plaintiff has a constitutional right to adequate medical care, but none of the allegations indicate that he did not receive adequate care from Nurse Lizenbee on the one occasion he saw her for the lumps in his chest.  At most, Plaintiff's allegations against Nurse Lizenbee are claims of negligence, which do not suffice under § 1983.  *See Estelle*, 429 U.S. at 106.  As a result, the Complaint fails to state a claim upon which relief can be granted as to Nurse Lizenbee.

### 3.  *Defendant Nurse Merideth*

Plaintiff alleges that on four occasions in August of 2016, Nurse Merideth failed to see Plaintiff for a sick call despite his complaints of lumps on his left chest.  Plaintiff asserts that Nurse Merideth deceptively indicated in his medical paperwork that he refused to be seen.  Plaintiff explains that refusals must be signed by the patient and two witnesses, but no refusals exist in his file because he wanted to be seen.

At this stage, the Court must accept Plaintiff's allegations as true and make all reasonable inferences in his favor.  *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019).  An allegation that a nurse dishonestly indicated that an inmate refused to be seen by a doctor in order to prevent medical treatment survives initial review.  *See Huskey v. Burris*, 2019 WL 77355, at *10 (E.D. Mo. Jan. 2, 2019) (plaintiff's claim that nurse prevented him from seeing a doctor and lied that he had refused an appointment was sufficient to pass initial review).  The Court will direct the Clerk of Court to issue process on Nurse Meredith in her individual capacity as to Plaintiff's claim of deliberate indifference to his medical needs.

### 4.  *Defendant Degan*

Plaintiff asserts that on several occasions between October 2020 and January 2021, while he was in administrative segregation, he submitted near-daily health service requests concerning his cancer and nerve pain.  Plaintiff alleges that Defendant Degen was responsible for scheduling appointments and failed to schedule him for a sick call.  Although he claims it is policy for the nursing staff to assess health service requests on a daily basis, Plaintiff does not allege that Degen was actually aware of his requests.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights."  *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege that defendant was personally involved in or directly responsible for the incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)

8

(*respondeat superior* theory inapplicable in § 1983 suits).  Plaintiff alleges no facts indicating Degen was directly involved in or personally responsible for any violation of his constitutional rights.  He alleges only that she was responsible for scheduling appointments, not that she knew he was trying to schedule an appointment or that she intentionally denied him one.  He does not allege that he spoke to Degen or addressed any messages or requests to her.  As a result, the complaint fails to state a claim upon which relief can be granted as to Degen.

### 5. *Defendant Nurse Practitioner Hill*

Plaintiff asserts he saw Defendant Hill on January 14, 2021, complaining of pain and discomfort associated with his diagnosed skin cancer.  He claims Hill ignored his complaints, failed to renew his pain medication, and decreased his ibuprofen dosage.

Delayed access to prescribed medical care for non-medical reasons may constitute deliberate indifference in some circumstances.  *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004).  Here, however, Plaintiff's allegations against Hill fail to state a claim for deliberate indifference.  A claim that a nurse decreased an inmate's pain medication merely "amounts to a disagreement with a treatment decision, and does not constitute deliberate indifference." *Hardman v. Corizon Med. Servs.*, 2020 WL 686025, at *5 (E.D. Mo. Feb. 11, 2020); *see also Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019) (a prisoner's disagreement with medical staff about the decision to offer him over-the-counter medications, rather than prescription medication, does not constitute deliberate indifference).  Plaintiff's allegations against Defendant Hill do not indicate intentional maltreatment or a refusal to provide essential care.  As a result, the Complaint fails to state a claim upon which relief can be granted as to Defendant Hill.

## MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff also asks the Court to appoint him counsel.  A self-represented litigant has "neither a constitutional nor a statutory right to appointed counsel in civil cases." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018).  A district court may appoint counsel in a civil case if it is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Id.* (citing *Johnson v. Williams,* 788 F.2d 1319, 1322 (8th Cir. 1986)).  When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the factual complexity of the issues, the litigant's ability to investigate the facts and

present his claims, the existence of conflicting testimony, and the complexity of the legal arguments. *Id.* (citing *Phillips*, 437 F.3d at 794).

After considering the factors, the Court finds that the appointment of counsel is unwarranted at this time. Plaintiff has demonstrated that he can adequately present his claims to the Court. Neither the factual nor the legal issues in this case appear to be unduly complex. The Court will therefore deny Plaintiff's motion for appointment of counsel but will entertain future motions for appointment of counsel as the case progresses.

**IT IS HEREBY ORDERED** that Plaintiff's motion seeking leave to commence this action without prepaying fees or costs, Doc. [2], is **GRANTED**.

**IT IS FURTHER ORDERED** that, within thirty (30) days of the date of this order, Plaintiff must pay an initial filing fee of $8.37. Plaintiff must make his remittance payable to "Clerk, United States District Court," and include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the Complaint as to Defendants Dr. Michael C. Hakala and Nurse Jacquelyn M. Merideth. Defendants shall be served by issuance of summons and service by the U.S. Marshal's Service at 300 East Pedro Simmons Drive, Charleston, Missouri 63834. Defendants must be personally served.

**IT IS FURTHER ORDERED** that Plaintiff's claims brought against all Defendants in their official capacities are **DISMISSED** for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff's deliberate indifference claims against Defendants Nurse Becky D. Lizenbee, Dana Degen, and Nurse Practitioner Nina Hill in their individual capacities are **DISMISSED** without prejudice for failure to state a claim.

**IT IS FINALLY ORDERED** that Plaintiff's Motion to Appoint Counsel, Doc. [4], is **DENIED** without prejudice.

Dated this 21st day of August, 2023.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE